**Opinion issued May 9, 2024**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-23-00482-CV**

———————————

**DAMARI DUARTE RODRIGUEZ AND YOSVANI DIAZ, Appellants**

**V.**

**AMIT THANDI, MD PA AND AMRIT THANDI MD INDIVIDUALLY, Appellees**

---

**On Appeal from the 151st District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-63494**

---

## MEMORANDUM OPINION

In this breach of contract case, appellants Damari Duarte Rodriguez and Yosvani Diaz appeal the trial court's amended order granting a temporary injunction in favor of appellees Amit Thandi, MD PA and Amrit Thandi MD, individually (collectively, Thandi). In two issues, Rodriguez contends that (1) the trial court erred

in finding that Thandi met her burden of establishing irreparable harm, and (2) the amended temporary injunction order violates Texas Rule of Civil Procedure 683 because it does not identify the threatened irreparable harm. We affirm.

## Background

Rodriguez is a licensed nurse practitioner in the State of Texas.[1] In 2017, she owned and operated the Duarte Family Practice, located at 14629 Beechnut St., Houston, Texas 77083 (Beechnut Practice), and practiced under the supervision of Dr. Francisco Ortiz. Rodriguez is married to Diaz. Amit Thandi, MD is a physician licensed in Texas and the owner-operator of the Cypress Family Practice, located at 11700 FM 1960 West, Houston, Texas 77065 (Cypress Practice).

On April 17, 2021, Rodriguez and Thandi entered into a Purchase Agreement under which Rodriguez agreed to sell the Beechnut Practice business and assets to Thandi for $170,000.[2] On April 19, 2021, the parties signed an employment agreement under which Rodriguez agreed to work at the Beechnut Practice for at least one month after the sale and thereafter as needed. On May 4, 2021, Rodriguez signed a notarized letter stating that she had sold her medical practice to Thandi and

---

[1]    The record reflects that Rodriguez received a medical degree from another country but practices solely as a nurse practitioner in the United States.

[2]    The Purchase Agreement included two inventory lists enumerating the items to be transferred from the Beechnut Practice to Thandi upon execution of the Purchase Agreement and a vendor's list.

further agreed to the transfer of her patient data to an electronic medical records (EMR) system of Thandi's choosing.

On September 30, 2021, Thandi sued Rodriguez for breach of contract, fraud, and misrepresentation, and sought a temporary injunction and restraining order to enjoin Rodriguez from contacting and soliciting former Beechnut Practice patients and from providing medical services within a twenty-mile radius of the Beechnut Practice in violation of the parties' agreement. Thandi attached her affidavit, a sworn statement by an employee attesting to Rodriguez's solicitation of a Beechnut Practice patient to her new medical practice, the parties' settlement agreement setting forth details of the sale, the Purchase Agreement, and the Assignment and Assumption of Lease Assignment.

Rodriguez filed an answer asserting a general denial and affirmative and specific defenses.

The parties amended their pleadings. In her third amended petition and application for temporary injunction—the live pleading in this case—Thandi added a claim for civil conspiracy as well as a claim for fraud and misrepresentation against Ortiz.

Rodriguez filed a motion in opposition to Thandi's application for temporary injunction arguing that injunctive relief was not warranted because (1) Thandi closed and ceased operating the Beechnut Practice on March 2, 2022, and (2) Thandi's third

3

amended petition failed to present a valid, enforceable non-compete agreement to support her request for a temporary injunction.

The trial court held an evidentiary hearing via Zoom on Thandi's application for temporary injunction on May 9, 2022. The trial court heard testimony from Fernando Saldivia, Christine Sephton, Thandi, and Rodriguez.

Saldivia, a business broker, testified that he advertised the Beechnut Practice for sale and that Thandi expressed an interest in buying the business. He testified that the parties' agreement included a non-compete clause. He explained to Rodriguez that the clause meant that she would not be permitted to practice within a twenty-mile radius of the Beechnut Practice. Saldivia testified that he explained the non-compete agreement to Rodriguez in both English and Spanish, and he believed that she understood his explanation. Saldivia also advised Rodriguez to have an attorney review the documents before executing them.

Sephton is the Clinical Director of Amrit Thandi, MD PA. Sephton testified that she participated in the purchase of the Beechnut Practice in April 2021 and was familiar with the parties' non-compete agreement. Sephton testified that Rodriguez initially assisted with the transition of the Beechnut Practice to Thandi but that she stopped working at the clinic on June 30, 2021. In August 2021, Sephton discovered that, despite the non-compete agreement, Rodriguez was continuing to treat approximately 80% of the Beechnut Practice patients at another location

approximately one mile away. She testified that although Thandi initially saw ten to fifteen patients a day after purchasing the Beechnut Practice in April 2021, the number steadily decreased until she was only seeing about three to five patients a day by July. Sephton recommended to Thandi that they close the Beechnut location because it was not financially sustainable. Sephton testified that Rodriguez provided her username and password to Sephton to access Practice Fusion, the EMR database Rodriguez used, and Rodriguez signed a document authorizing the transfer of patient information to Thandi. However, when Practice Fusion contacted Rodriguez to authenticate the document, Rodriguez refused and stated that she did not want to transfer the data. Practice Fusion contacted Sephton to advise her of Rodriguez's refusal and stated that Sephton would have to subpoena Practice Fusion to access the patient records.

Thandi testified that one of the terms of the parties' agreement for the sale of the Beechnut Practice was that Rodriguez would not practice or seek employment within twenty miles of the Beechnut Practice location. Thandi testified that although Rodriguez agreed to continue working for three months at the Beechnut Practice following the sale, and that the third month was designed to help facilitate the transfer and introduce the patients to the new provider, Rodriguez stopped working at the clinic on June 30, 2021. Thandi stated that Rodriguez did not allow Thandi's staff to access patient information to enable them to transfer it to their own EMR

database. Thandi testified that if she were able to obtain patient information and Rodriguez stopped diverting patients to her new clinic one mile away, Thandi could "absolutely" re-open the Beechnut Practice and it would become sustainable once again.

Rodriguez testified that she signed an agreement containing a non-compete clause but that she did not read it before signing it. Rodriguez stated that she told Thandi that she was working at another location within a mile of the Beechnut Practice. Rodriguez testified that she agreed to turn over patient information stored in Practice Fusion to Thandi, and that she did so. When asked why her signature appeared on an agreement with a non-compete clause, Rodriguez testified that she was only shown the last page of the agreement and told to sign it for tax purposes, and that she was not provided a copy of the document.

Following the hearing, the trial court entered an order granting Thandi's application for temporary injunction. The May 14, 2022 order stated:

### TEMPORARY INJUNCTION

The application of Plaintiff, **Amrit Thandi,** for Temporary Injunction [] was heard by the Court, via zoom hearing, on the 9th day of May 2022, with the court having heard testimony of the parties and the witnesses, with the Defendant Damari Duarte Rodriquez['s] testimony being through a certified translator, examined the pleadings, affidavits, and exhibits of the parties, and **HEREBY FINDS:**

1. That Plaintiff is entitled to a Temporary Injunction forbidding the Defendant Damari Duarte Rodriquez from working as a nurse practioner [sic] or working in a medical environment within a

twenty (20) mile radius from 14629 Beechnut St., Houston, Texas 77083. Her work as a nurse practioner [sic] includes both in person visits at any physical medical practice location within the agreed upon twenty (20) mile radius of 14629 Beechnut St., Houston, Texas 77083. It also would include her working as a nurse practioner [sic] virtually wherein her virtual visit is recorded back through medical record or SOAP notes to a location within the 20-mile radius of 14629 Beechnut St., Houston, Texas 77083.

2. That Plaintiff is entitled to an injunction stopping Defendant Damari Duarte Rodriquez from blocking the transfer of Practice Fusion to Plaintiff Dr. Amrit Thandi.

**IT IS THEREFORE ORDERED** that the Injunction stopping Defendant Damari Duarte Rodriquez, DDFMP, PLLC, dba Duarte Family Clinic and Yosvani Diaz Lopez from working as a nurse practioner [sic] ~~or working in a medical environment~~ within a twenty (20) mile radius from 14629 Beechnut St., Houston, Texas 77083. The determining factor for practicing within the 20 mile radius is based upon the Medicare Administrative Contractor (MAC) service codes for the service/treatment as they will be directly related to and be filed with a medical facility, pharmacy or other entity that Defendant Damari Duarte Rodriquez is working for that is within a twenty (20) mile radius of 14629 Beechnut St., Houston, Texas 77083. The practice locations deemed to be within the 20 mile radius as agreed, are as follows:

a. The location where health services and health related services are provided or received, through telecommunication technology. Patient is not located in their home when receiving health services or health related services through telecommunication technology.

b. The location where health services and health related services are provided or received, through telecommunication technology. Patient is located in their home (which is a location other than a hospital or other facility where the patient receives care in a private residence) when receiving health services or health related services through telecommunication technology.

c. Location where the Defendant Damari Duarte Rodriquez routinely provides health examinations, diagnosis, and treatment of illness or injury.

7

d. Location where Defendant Damari Duarte Rodriquez lists with the State Medical Board that she is working as a nurse practioner [sic].

e. Working in any facility which would be in direct competition with the Plaintiff and in violation of the no compete agreement, and within the above-described physical or virtual 20 mile radius prohibitions.

B. **IT IS FURTHER ORDERED** that the Defendant Damari Duarte Rodriquez is enjoined from blocking the transfer of the full and complete practice fusion database used and is **HEREBY ORDERED** to comply with the terms of the parties['] sales agreement and refrain from interfering with ~~facilitate~~ the full and complete transfer of practice fusion database to the Plaintiff Amrit Thandi ~~and is not allowed to keep or retain a copy of anything in or a part of the data base~~.

The order set the trial for the two-week docket beginning on October 17, 2022 and a $1,500.00 bond.

On September 15, 2022, Rodriguez moved to set aside the temporary injunction on the grounds that the order failed to (1) state the reasons for its issuance or describe injury as required by Texas Rule of Civil Procedure 683; (2) include decretal language to enjoin Rodriguez from working as a nurse practitioner; and (3) clearly and sufficiently describe the acts to be enjoined. Thandi filed a response to the motion. Following a hearing, Thandi moved to amend the temporary injunction order and requested that the trial court enter the proposed amended order correcting the alleged defects.

On June 5, 2023, following a hearing, the trial court entered an order denying Rodriguez's motion to set aside the May 14, 2022 temporary injunction order and an amended temporary injunction order. The amended order states in its entirety:

**AMENDED ORDER GRANTING TEMPORARY INJUNCTION**

On this date, the Court having considered Plaintiffs' Motion to Amend Temporary Injunction Order, the responses and replies, and arguments of counsel finds that the Motion is with merit and should be **GRANTED.**

The application of Plaintiff, Amrit Thandi, for Temporary Injunction and [sic] was heard by the Court, via zoom hearing, on the 9th day of May 2022, the Court having considered the testimony of the parties and the witnesses, the pleadings, affidavits, and exhibits of the parties, the Court is of the opinion that the Motion for Temporary Injunction should be **GRANTED.**

The Court, in accordance with Rule 6[83] of the Texas Rules of Civil Procedure **HEREBY FINDS** as follows:

1. On August 17, 2021 Damari Duarte Rodriguez ("Rodriguez") signed an Employment Contract with Plaintiffs which contained a non-compete clause. Upon signing the Employment Contract, Rodriguez had access to information and patients that she did not have access to until she signed the agreement. The agreement was signed prior to Rodriguez commencing work at Plaintiffs' practice. *See* Ex. A, Temp. Inj. Hr'g Tr. At 47:8-20; 50:2-22.

2. The Employment Cont[r]act contains an enforceable covenant not to compete, which is ancillary to an otherwise enforceable agreement, is supported by adequate and appropriate consideration, and is reasonable as to time and geographic scope.

3. The agreement was explained to Rodriguez in English and Spanish prior to her executing the agreement. *See* Ex. A, Temp. Inj. Hr'g Tr. at 20:22-21:22; 22:12-19.

4. Despite signing the non-compete agreement Rodriguez immediately commenced working at clinics within a 20-mile radius of Plaintiffs'

9

practice in direct violation of the non-compete. Rodriguez used confidential information belonging to Plaintiffs to directly compete with Plaintiffs, to Plaintiffs' disadvantage. *See* Ex. A, Temp. Inj. Hr'g Tr. at 33:15-34:13.

5. Rodriguez also consented to the transfer of the Practice Fusion Database to Plaintiffs in connection with the sale of the practice. *See* Ex. A, Temp. Inj. Hr'g Tr. at 36:8-25.

6. To date, Rodriguez has not transferred the Practice Fusion Database and continues to use the information contained in the database to compete with Plaintiffs. Rodriguez also took steps to prevent Plaintiffs' access to the database by revoking her consent to the transfer. *See* Ex. A, Temp. Inj. Hr'g Tr. at 38:23-39:5; 39:23-41:2.

7. If Rodriguez is allowed to continue to interfere with the transfer of the Practice Fusion Database, while maintaining her own access to the database, there is no way to protect Plaintiffs' business from losing clients due to improper competition by Rodriguez. *See* Ex. A, Temp. Inj. Hr'g Tr. at 33:15-34:24; 37:13-38:17.

8. If Rodriguez is permitted to work for a competitor or open her own practices in the same field of the business she sold to Plaintiffs, there is no way to protect Plaintiffs' business and goodwill. The only effective protective device is to restrain Rodriguez from working and providing services within 20 miles of the practice sold to Plaintiffs.

9. Rodriguez's continued violation of the noncompete will alter the status quo and tend to make any judgment in favor of Plaintiffs ineffective. If Rodriguez is allowed to compete with Plaintiffs, Plaintiffs will be without any adequate remedy at law.

10. Plaintiffs are likely to suffer irreparable damage. Ex. A, Temp. Inj. Hr'g Tr. at 33:15-34:24; 37:13-38:17.

11. Plaintiffs are likely to prevail in the trial of this cause.

IT IS THEREFORE **ORDERED** that:

10

Defendant Damari Duarte Rodriquez is enjoined from working as a nurse practitioner at any practice location within a twenty (20) mile radius from 14629 Beechnut St., Houston, Texas 77083. The practice locations shall be defined as:

a. Any location where health services and health related services are provided through telecommunication technology.

b. Any location where health services and health related services are provided through telecommunication technology to prior patients of Duarte Family Clinic.

c. Any location where the Defendant Damari Duarte Rodriquez routinely provides health examinations, diagnosis, and treatment of illness or injury.

d. Any location where Defendant Damari Duarte Rodriquez lists with the State Nursing Board that she is working as a nurse practitioner.

e. Any facility which would be in direct competition with the Plaintiffs and within the above-described physical or virtual 20-mile radius prohibitions.

**IT IS FURTHER ORDERED** that the Defendant Damari Duarte Rodriquez is enjoined from blocking the transfer of the full and complete practice fusion database used and is **HEREBY ORDERED** to comply with the terms of the parties['] sales agreement and refrain from interfering with the full and complete transfer of practice fusion database to the Plaintiff Amrit Thandi.

**IT IS FURTHER ORDERED** that trial on the merits of this matter is hereby set for the two week docket starting July 17, 2023.

IT IS FURTHER **ORDERED** that bond is set in the amount of $1,500.00 which has already been posted by Plaintiff.

THIS INJUNCTION SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL FURTHER ORDER OF THE COURT.

This interlocutory appeal followed.

11

## Applicable Law and Standard of Review

The purpose of a temporary injunction is to preserve the status quo pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). Temporary injunctions are an extraordinary remedy and do not issue as a matter of right. *Id.*; *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993) (per curiam). To obtain a temporary injunction, an applicant is not required to establish that it will prevail upon a final trial on the merits, but it must plead and prove that it (1) has a cause of action against the opposing party, (2) has a probable right on final trial to the relief sought, and (3) faces probable, imminent, and irreparable injury in the interim. *See Abbott v. Harris Cnty*., 672 S.W.3d 1, 8 (Tex. 2023); *Butnaru*, 84 S.W.3d at 204; *Clark v. Hastings Equity Partners*, LLC, 651 S.W.3d 359, 366 (Tex. App.—Houston [1st Dist.] 2022, no pet.).

Although the decision to grant or deny a request for a temporary injunction is committed to the sound discretion of the trial court, once the court decides to grant injunctive relief, the order itself must contain the reasons for its issuance. TEX. R. CIV. P. 683; *see also Clark*, 651 S.W.3d at 366. Texas Rule of Civil Procedure 683, which governs the form and scope of injunctions and temporary restraining orders, requires that a temporary injunction order specifically set forth the reasons the trial court believes irreparable injury will result if an injunction does not issue. TEX. R. CIV. P. 683; *Clark*, 651 S.W.3d at 366. This requirement is

mandatory. *See InterFirst Bank San Felipe, N.A. v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex. 1986). An order that does not comply with the requirements of Rule 683 "is subject to being declared void and dissolved." *Helix Energy Solutions Grp., Inc.*, 452 S.W.3d at 44 (quoting *InterFirst Bank*, 715 S.W.2d at 641).

Because this is an interlocutory appeal, our review is strictly limited to determining whether there has been a clear abuse of discretion by the trial court in granting the application for a temporary injunction, and we do not address the merits of the underlying case. *Davis v. Huey*, 571 S.W.2d 859, 861–62 (Tex. 1978); *Patel v. St. Luke's Sugar Land P'ship, L.L.P.*, 445 S.W.3d 413, 420 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *see also Brooks v. Expo Chem. Co., Inc.*, 576 S.W.2d 369, 370 (Tex. 1979) (stating that because "the effect of a premature review of the merits is to deny the opposing party the right to trial by a jury . . . it will not be assumed that the evidence taken at a preliminary hearing on temporary injunction will be the same as the evidence developed at a trial on the merits"). In making this determination, we may not substitute our judgment for that of the trial court unless its decision was so arbitrary that it exceeded the bounds of reasonableness. *See Butnaru*, 84 S.W.3d at 204.

### Appellate Jurisdiction

In her brief on appeal, Thandi contends that this Court lacks jurisdiction over Rodriguez's appeal because (1) Rodriguez is appealing the May 14, 2022 temporary

injunction order and, therefore, her appeal is untimely; (2) her notice of appeal of the June 5, 2023 amended temporary injunction order was untimely; and (2) the trial court's amended temporary injunction order is not an appealable order. Because Thandi's arguments implicate our jurisdiction over this appeal, we address them first.

Thandi's first contention—that Rodriguez is appealing the May 14, 2022 temporary injunction order and therefore her appeal is untimely—is without merit. The record reflects that, on June 29, 2023, Rodriguez filed a notice of accelerated appeal from two June 5, 2023 trial court orders: the amended order granting temporary injunction and an order denying Rodriguez's motion to set aside temporary injunction.

Thandi's second contention—that Rodriguez's notice of appeal filed on June 29, 2023 was untimely—is similarly unavailing. A notice of accelerated appeal must be filed within twenty days of the judgment or appealable order. *See* TEX. R. APP. P. 26.1(b).[3] Thus, Rodriguez's notice of appeal was due within twenty days of the date of the trial court's June 5, 2023 orders, or no later than June 26, 2023. *See* TEX. R.

---

[3] The Legislature has identified an order granting a temporary injunction and an order denying a motion to set aside a temporary injunction as appealable interlocutory orders. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(4) (identifying orders where trial court "grants or refuses a temporary injunction or grants or overrules a motion to dissolve a temporary injunction" as appealable interlocutory orders).

APP. P. 28.1 (identifying appealable interlocutory orders as "accelerated appeals"). Texas Rule of Appellate Procedure 26.3 allows for an extension of the deadline to file a notice of appeal if, within fifteen days after the deadline for filing a notice of appeal, a party files a notice of appeal in the trial court and a motion for extension of time to file a notice of appeal in the appellate court. *See* TEX. R. APP. P. 26.3. Thus, Rodriguez's notice of appeal and motion for extension of time to file a notice of appeal were due no later than July 11, 2023. The record reflects that Rodriguez filed her notice of appeal on June 29, 2023 and a motion to extend time to file notice of appeal on July 3, 2023—both within the extended period provided by Texas Rule of Appellate Procedure 26.3.[4]

Thandi also argues that we lack jurisdiction over this appeal because the trial court's June 5, 2023 amended temporary injunction order did not substantively modify the first temporary injunction order and is, therefore, not appealable. In support of her argument, Thandi cites several cases holding that an appellate court lacks jurisdiction to review an amended temporary injunction order where the sole modification to the trial court's amended order is an extension of the trial date.[5]

---

[4]     This Court issued an order granting Rodriguez's motion to extend time to file notice of appeal on July 20, 2023.

[5]     *See, e.g.*, *In re Graybar Elec. Co., Inc.*, No. 13-08-00073-CV, 2008 WL 3970865, at *12 (Tex. App.—Corpus Christi–Edinburg Aug. 26, 2008, no pet.) (mem. op.) (concluding court lacked jurisdiction where mere changing of date on temporary

Thandi asserts that similarly, here, "[t]here was no change to the original order but for the new trial date that was assigned in the Amended Temporary Injunction Order." Contrary to Thandi's assertion and the cases upon which she relies, the amended order in this case modified more than the trial date. The June 5, 2023 order added nine new paragraphs to the trial court's order as well as modified the meaning of "practice location" for the purpose of defining the twenty-mile radius from the Beechnut Practice within which Rodriguez was enjoined from working as a nurse practitioner. *See Clark*, 651 S.W.3d at 369 (concluding second temporary injunction order, which altered first order in substantive ways, including changing restrictions for solicitation of employees and scope of restricted activity, was effective order subject to rule governing form and scope of injunctions).

Further, an amended or modified temporary injunction supersedes and implicitly vacates a prior temporary injunction. *See Ahmed v. Shimi Ventures, L.P.*, 99 S.W.3d 682, 687–88 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *Smith v. Smith*, 681 S.W.2d 793, 797 (Tex. App.—Houston [14th Dist.] 1984, no writ); *see*

injunction to effectuate extension did not constitute substantive modification and therefore order was not appealable); *City of Lancaster v. Tex. Motor Transp. Ass'n, Inc*., No. 05-05-00169-CV, 2005 WL 2303415, at *1 (Tex. App.—Dallas Sept. 22, 2005, no pet.) (mem. op.) (holding court lacked jurisdiction where only change made to temporary injunction by subsequent order was to extend injunction's duration until new trial setting and court's order made no substantive modification to original temporary injunction); *Ludewig v. Houston Pipeline Co*., 737 S.W.2d 15, 16 (Tex. App.—Corpus Christi–Edinburg 1987, no writ) (holding trial court's order amending temporary injunction to include new trial date was not appealable order).

*also Martin Kroesche Enters., Inc. v. Hilpold*, No. 13-11-00404-CV, 2012 WL 2609102, at *3 (Tex. App.—Corpus Christi–Edinburg July 5, 2012, no pet.) (mem. op.) ("When a trial court modifies a temporary injunction, the second order is a complete injunction in and of itself, thus superseding the original."). Such a modified injunction renders a prior injunction ineffectual. *See Kirkland v. Kirkland*, No. 02-22-00469-CV, 2023 WL 3643642, at *7 (Tex. App.—Fort Worth May 25, 2023, no pet.) (mem. op.) (citing *B. & M. Mach. Co. v. Avionic Enters.*, 566 S.W.2d 901, 902 (Tex. 1978) ("[T]he second judgment reformed and, in effect, vacated the first judgment.")). Accordingly, we hold that we have jurisdiction to review the amended temporary injunction order in this interlocutory appeal.

**Discussion**

Rodriguez raises two issues on appeal. First, she contends that the trial court erred in finding that Thandi met her burden of establishing irreparable injury. Second, she asserts that the amended temporary injunction order violates Texas Rule of Civil Procedure 683 because it does not identify the threatened irreparable harm.

### A.     Irreparable Harm

Rodriguez contends that the amended temporary order is void and should be vacated because Thandi failed to establish that Rodriguez's competing as a nurse-practitioner near the now-closed Beechnut Practice posed a risk of irreparable injury to Thandi. She argues that the trial court's only finding of irreparable injury, based

17

on portions of Thandi's testimony at the March 9, 2022 evidentiary hearing regarding the loss of patients from the Beechnut Practice due to Rodriguez's alleged failure to comply with the non-compete agreement, was unsupported by the evidence and wholly conclusory.

Whether to grant or deny a temporary injunction is within the trial court's sound discretion. *Butnaru*, 84 S.W.3d at 204. In determining whether the trial court abused its discretion in granting or denying relief, we do not review the underlying case's merits. *See Davis*, 571 S.W.2d at 861–62. Under this standard, we review the evidence submitted to the trial court in the light most favorable to the trial court's ruling, draw all legitimate inferences from the evidence, and defer to the trial court's resolution of conflicting evidence. *See Six Bros. Concrete Pumping, LLC v. Tomczak*, No. 01-21-00161-CV, 2022 WL 17981577, at *3 (Tex. App.—Houston [1st Dist.] 2022, pet. denied) (mem. op.) (citing *IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 196 (Tex. App.—Fort Worth 2005, no pet.)). Moreover, because a trial court's decision to grant a temporary injunction is based on the record presented at the temporary injunction hearing, we will not assume that the evidence taken at a preliminary hearing will be the same as the evidence developed at a full trial on the merits. *See Davis*, 571 S.W.2d at 862. Thus, we will not reverse a temporary injunction order unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Butnaru*, 84 S.W.3d at 204; *Int'l*

*Paper Co. v. Harris Cnty.*, 445 S.W.3d 379, 387 (Tex. App.—Houston [1st Dist.] 2013, no pet.). The trial court does not abuse its discretion when basing its temporary injunction decision on conflicting evidence nor does it abuse its discretion when some evidence of substantive and probative character supports its decision. *Butnaru*, 84 S.W.3d at 211; *Equine Sports Med. & Surgery Weatherford Div., PLLC v. Tipton*, No. 02-19-00346-CV, 2020 WL 6165414, at *4 (Tex. App.—Fort Worth 2020, no pet.) (mem. op); *Yamin v. Carroll Wayne Conn, L.P.*, No. 01-18-00131-CV, 2019 WL 543412, at *6 (Tex. App.—Houston [1st Dist.] Feb. 12, 2019, pet. denied) (mem. op.).

"To establish an irreparable injury, the applicant must show that it cannot be 'adequately compensated in damages or the damages cannot be measured by any certain pecuniary standard.'" *Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 235 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (quoting *Butnaru*, 84 S.W.3d at 204). The applicant must therefore establish that there is no adequate remedy at law for damages. *Id.* "An adequate remedy at law is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief." *Id.* Texas courts have recognized that "assigning a dollar amount to such intangibles as a company's loss of clientele, goodwill, marketing techniques, and office stability, among others, is not easy." *Miller v. Talley Dunn Gallery, LLC*, No. 05-15-00444-CV, 2016 WL 836775, at *8 (Tex. App.—Dallas Mar. 3, 2016, no

19

pet.) (mem. op.) (quoting *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 228 (Tex. App.—Fort Worth 2009, pet. denied) (citing *Martin v. Linen Sys. for Hosps., Inc.*, 671 S.W.2d 706, 710 (Tex. App.—Houston [1st Dist.] 1984, no writ) (noting that examples of non-compensable injuries include company's loss of clientele, goodwill, marketing techniques, and office stability))).

The trial court heard testimony that the parties' agreement for the sale of the Beechnut Practice included a non-compete agreement prohibiting Rodriguez from practicing within a twenty-mile radius of the Beechnut Practice. Despite the non-compete agreement, Rodriguez continued seeing patients at another location only one mile from the practice. Those patients accounted for approximately 80% of the Beechnut Practice patients. The evidence showed that while Thandi initially saw ten to fifteen patients a day after purchasing the Beechnut Practice in April 2021, the number steadily decreased until she was seeing about three patients a day by July 2021. Thandi had to close the clinic because it was no longer financially sustainable. The court also heard evidence that, despite the parties' agreement, Rodriguez refused to facilitate the transfer of patient information to Thandi's EMR system. Thandi testified that if she were able to gain access to Rodriguez's EMR database and Rodriguez ceased diverting patients to her new clinic one mile away, Thandi could re-open the Beechnut Practice and it would once again become economically viable.

20

Viewing the evidence in the light most favorable to the trial court's ruling, there is sufficient evidence supporting the trial court's conclusion that Thandi proved irreparable injury. The trial court did not abuse its discretion by granting a temporary injunction. *TMC Worldwide, L.P. v. Gray*, 178 S.W.3d 29, 36 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (noting abuse of discretion does not exist if trial court heard conflicting evidence and evidence appears in record that reasonably supports trial court's decision) (citing *Davis*, 571 S.W.2d at 862). We overrule Rodriguez's first issue.

### B.    Compliance with Rule 683

In her second issue, Rodriguez contends that the amended temporary injunction order violates Texas Rule of Civil Procedure 683 because it does not specify the threatened irreparable damage.

To comply with Rule 683, a trial court must set out in the temporary injunction order the reasons the court finds it proper to issue the injunction, including the reasons the applicant will suffer irreparable harm if the injunction does not issue. TEX. R. CIV. P. 683. It is not enough simply to recite that irreparable harm will ensue; the trial court must explain the reasons *why* such injury will result. *See Clark*, 651 S.W.3d at 373 (citing *State v. Cook United, Inc.*, 464 S.W.2d 105, 106 (Tex. 1971)). Under Rule 683, there is no requirement that the order state the reasons why the appellee has a probable right to recovery or relief at a trial on the merits; rather, the

order need only state the reasons why injury will be suffered in the absence of a temporary injunction. *Martin*, 671 S.W.2d at 710.

Here, the amended order states:

- If Rodriguez is allowed to continue to interfere with the transfer of the Practice Fusion Database, while maintaining her own access to the database, there is no way to protect Plaintiffs' business from losing clients due to improper competition by Rodriguez.

- If Rodriguez is permitted to work for a competitor or open her own practices in the same field of the business she sold to Plaintiffs, there is no way to protect Plaintiffs' business and goodwill. The only effective protective device is to restrain Rodriguez from working and providing services within 20 miles of the practice sold to Plaintiffs.

- Rodriguez's continued violation of the noncompete will alter the status quo and tend to make any judgment in favor of Plaintiffs ineffective. If Rodriguez is allowed to compete with Plaintiffs, Plaintiffs will be without any adequate remedy at law.

The amended order adequately states why the trial court found it proper to grant the injunction and why Thandi will suffer injury if an injunction is not ordered. We conclude this language complies with the strict requirements of Rule 683. *See id.* at 710–11 (concluding stated reasons in trial court's order that temporary injunction was necessary to protect employer's goodwill and business, that former employee had violated covenant not to compete and probably would continue to do so, and that employer would be harmed unless temporary injunction were issued, as status quo could not be maintained without injunction, constituted sufficient compliance with specificity requirements of Rule 683); *see also Wright v. Liming*,

22

No. 01-19-00060-CV, 2019 WL 3418516, at *6 (Tex. App.—Houston [1st Dist.] July 30, 2019, no pet.) (mem. op.) (concluding that trial court adequately identified reason why injury would be suffered by plaintiff landowners in absence of temporary injunction where order stated neighboring landowners "do intend and will continue to trespass" on plaintiff's property and "interfere with the construction of" plaintiffs' home absent issuance of temporary injunction, such interference would make later judgment in plaintiffs' favor inadequate, and additional periods of interference would leave plaintiffs without adequate remedy at law); *Miller*, 2016 WL 836775, at *6 (concluding trial court's findings in temporary injunction order that plaintiffs had suffered, and would continue to suffer, irreparable harm for which there was no adequate remedy at law where defendant's conduct jeopardized plaintiffs' confidential information, employment relations, existing and prospective business relationships, reputation, and goodwill were sufficiently specific to comply with Rule 683's requirements). We overrule Rodriguez's second issue.

**Conclusion**

We affirm the trial court's amended order granting temporary injunction.

Amparo Monique Guerra
Justice

Panel consists of Chief Justice Adams and Justices Farris and Guerra.

23